Peter Bonfante (California Bar No. 23274)
CELS ENTERPRISES, INC.
3485 S. La Cienega Blvd.
Los Angeles, CA 90016
Telephone: (310) 838-2103
Email: PBonfante@celsinc.com

*Attorney for Plaintiff*
CELS ENTERPRISES, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CELS ENTERPRISES, INC., <br><br> Plaintiff, <br><br> v. <br><br> MARC DEFANG, INCORPORATED, <br><br> Defendant. | Case No. <br><br> **COMPLAINT FOR** <br><br> **(1) FEDERAL TRADEMARK AND TRADE DRESS INFRINGEMENT** <br> **(2) FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN** <br> **(3) FEDERAL TRADEMARK AND TRADE DRESS DILUTION** <br> **(4) CALIFORNIA STATUTORY UNFAIR COMPETITION** <br> **(5) CALIFORNIA STATUTORY TRADEMARK DILUTION** <br> **(6) COMMON LAW TRADEMARK / TRADE DRESS INFRINGEMENT AND UNFAIR COMPETITION** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff CELS ENTERPRISES, INC. (hereinafter "Plaintiff" or "CELS"), for its complaint against Defendant MARC DEFANG, INCORPORATED (hereinafter "Defendant" or "DEFANG"), alleges as follows:

-1-
COMPLAINT

## JURISDICTION AND VENUE

1. This is a complaint for (1) Federal Trademark and Trade Dress Infringement under Lanham Act § 43(a), 15 U.S.C. § 1125(a); (2) Federal Unfair Competition and False Designation of Origin under Lanham Act § 43(a), 15 U.S.C. § 1125(a); (3) Federal Trademark and Trade Dress Dilution under Lanham Act § 43(c), 15 U.S.C. § 1125(c); (4) California Statutory Unfair Competition under Cal. Bus. & Prof. Code § 17200, *et seq.*; (5) California Statutory Trademark and Trade Dress Dilution under Cal. Bus. & Prof. Code § 14247, *et seq.*; and (6) common law trademark / trade dress infringement and unfair competition.

2. This Court has subject-matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a), in that this case arises under the trademark laws of the United States, 15 U.S.C. § 1051 *et seq.* This Court has pendant jurisdiction pursuant to 28 U.S.C. §§ 1367 and 1338(b), in that this case arises under claims joined with a substantial and related claim under the trademark laws of the United States.

3. This Court has personal jurisdiction over Defendant under Fed. R. Civ. P. 4(k) and Cal. Code Civ. P. 410.10 because Defendant has sufficient minimum contacts with the United States and California. Upon information and belief, Defendant has distributed, marketed and sold products within this State; has engaged in acts or omissions outside of this State causing injury within the State; has manufactured or distributed products used or consumed within this State in the ordinary course of trade; and/or has otherwise made or established contacts with this State sufficient to permit the exercise of personal jurisdiction.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant conducts business within this District and has engaged in, and continues to engage in, acts of distributing, marketing and selling the infringing products to consumers located in this District.

## PARTIES

5. Plaintiff is a corporation formed under the laws of New York, with a principal place of business in Los Angeles, California. Plaintiff specializes in the design, manufacture, distribution, marketing and sale of women's fashion footwear and accessories. Plaintiff's products are distributed to retailers for sale in over 30 countries, including the United States. Plaintiff also

1 operates its own retail locations in Los Angeles, California and Las Vegas, Nevada; and Plaintiff sells its products through its online store, www.chineselaundry.com.

6. Upon information and belief, Defendant is a corporation formed under the laws of North Carolina, with a principal place of business in Charlotte, North Carolina. Defendant advertises itself as a designer of women's bridal, pageant and prom footwear. Defendant's products (including the infringing products discussed below) directly compete with Plaintiff's products. Upon information and belief, Defendant markets, advertises, distributes and sells its products to consumers throughout the United States, including in California and this District. Among other methods, Defendant markets and sells its products to consumers through its online store, www.marcdefang.com. According to its website, most of Defendant's products are sold directly to consumers through its online store.

## FACTUAL ALLEGATIONS

7. Formed in 1971, Plaintiff started as a shoe manufacturer selling to mass merchants. Through its hard work, substantial time and money investments, customer research, marketing and creativity, Plaintiff steadily expanded its influence in the women's fashion footwear industry. Today, Plaintiff is a leading force and trendsetter in this industry. Plaintiff's brands and products are extremely popular and respected in the United States and abroad. Plaintiff's business emphasizes quality, fashion, competitive price points, customer service, and a focused marketing strategy. Its products are sold at leading department stores and specialty boutiques throughout the United States and abroad; through online sellers; and through Plaintiff's own Chinese Laundry Stores and online store.

8. Plaintiff has developed several different brands of footwear. The company's flagship brand is "Chinese Laundry," which started in 1981 and has done over $1 billion in sales. Chinese Laundry is one of the largest women's footwear distributors in the United States. The brand is famous and well-known among consumers in the United States and abroad.

9. Plaintiff has spent millions of dollars marketing and promoting the Chinese

1 | Laundry brand to consumers in the United States and abroad.

2     10.     Since 2014, Chinese Laundry has been an official sponsor of the prestigious and highly-watched Miss Universe pageants (which includes the Miss Universe, Miss U.S.A. and Miss Teen U.S.A. competitions). As a result of Plaintiff's marketing, Chinese Laundry's shoes are highly sought-after by pageant followers and other groups interested in high-end fashion.

    11.     Two of Plaintiff's most successful product-lines within the Chinese Laundry brand are platform sandals called the "Tippy Top"™ and the "Teaser"™. The Teaser™ shoe is essentially identical to the Tippy Top™ shoe, but marketed and sold under a different name. Both shoes have the same design, shape, look, and feel.

    12.     Plaintiff first marketed and sold the Tippy Top™ to consumers in 2012. Starting that year, and continuously since to this date, the Tippy Top™ has been marketed, advertised and sold to consumers throughout the United States, including California and every other state.[1]

    13.     Plaintiff first marketed and sold the Teaser™ to consumers in 2014. Starting that year, and continuously since to this date, the Teaser™ has been marketed, advertised and sold to consumers throughout the United States, including California and every other state.[2]

    14.     An example of the Teaser™ shoe is shown below in Figure 1.

---

[1] Plaintiff has filed a federal trademark application for its Tippy Top™ mark with the U.S. Patent and Trademark Office. That application is currently pending.

[2] Plaintiff has filed a federal trademark application for its Teaser™ mark with the U.S. Patent and Trademark Office. That application is currently pending.

-4-
COMPLAINT



Teaser™ (nude)

Fig. 1

The Tippy Top™ looks identical to the shoe in Figure 1. Besides nude, Plaintiff also markets and sells Tippy Top™ and Teaser™ shoes in different colors.

15. Through Plaintiff's substantial marketing efforts and time and money investments, its Tippy Top™ and Teaser™ shoes are among the most popular, well-recognized and highly-regarded shoes among consumers in the United States and abroad. To date, Plaintiff has sold over 50,000 pairs of Tippy Top™ and Teaser™ shoes.

16. Among other marketing efforts, in the past few years, Plaintiff's Tippy Top™ and Teaser™ shoes have been worn by the contestants in the swimsuit competitions of the Miss Universe competitions. Plaintiff has spent considerable time and money, and has had to develop key business relationships, to have the opportunity for such highly-visible and desirable promotion.

17. Plaintiff has also marked and sold an updated version of the Teaser™ called the "Teaser 2"™. The Teaser 2™ essentially kept the same design, shape, look and feel of the original shoe.

18. An example of the Teaser 2™ is shown below in Figure 2.



Teaser 2™ (nude)

Fig. 2

Besides nude, Plaintiff also markets and sells this shoe in different colors.

19. Like the original shoe, the Teaser 2™ is one of Plaintiff's most successful and popular shoes. It is widely-recognized and highly-regarded among consumers.

20. The Teaser 2™ has been marketed, advertised and sold to consumers throughout the United States, including California and every other state. To this date, Plaintiff continues to sell its Tippy Top™, Teaser™ and Teaser 2™ shoes throughout the United States.

21. Plaintiff has invested substantial amounts of time and money marketing and promoting its Tippy Top™, Teaser™ and Teaser 2™ shoes through a variety of mediums, including (but not limited to) magazines and other print media, internet and online stores, and pageant sponsorships.

22. Upon information and belief, Plaintiff was the first company to use the name Tippy Top™, Teaser™ and Teaser 2™ in commerce for a women's shoe in the United States, including commerce in California and every other state.

23. As described above, Plaintiff designs, manufactures, distributes, markets and sells its platform sandal shoes under the unique and distinctive trademarks Tippy Top™, Teaser™ and Teaser 2™ (the "Trademarks"). Plaintiff is the creator and owner of the Trademarks, and it has

invested heavily in developing the Trademarks and using them in commerce. As a result of Plaintiff's efforts, the Trademarks have acquired distinctive meaning and valuable goodwill among consumers, who associate the Trademarks with Plaintiff's Chinese Laundry brand and its high-end, fashionable, and superior-quality shoes. Consequently, Plaintiff has acquired substantial trademark rights and protections in the Trademarks under common law and statute.

24. Additionally, Plaintiff's Tippy Top™, Teaser™ and Teaser 2™ shoes have an overall unique and distinctive design, shape, pattern, look and feel that serves to identify Plaintiff as their point of origin (the "Tippy Top™ / Teaser™ Trade Dress"). The Tippy Top™ / Teaser™ Trade Dress includes, without limitation, the following elements:

   a. A platform sandal with stiletto heel in a distinctive shape and configuration. This includes, *inter alia*, a platform that is distinctively thick, chunky, and prominent.

   b. A series of six flat, narrow straps secured above the platform, and which are placed in an overlapping criss-cross pattern across the vamp.

   c. A separate heel strap secured in front of the heel, angling back and tapering in size towards the back.

   d. Two of the straps on each side of the platform extend back, criss-cross each other mid-shoe, and connect to each side of the heel strap. One strap is stitched directly into one side of the heel strap, while the other strap connects through a small buckle that is stitched into the other side of the heel strap. These two straps are positioned behind the first three straps of the platform, and in front of the sixth strap of the platform.

   e. All straps have stitching on the outside edges and are made of a synthetic patent material.

25. Plaintiff has used all of these elements of the Tippy Top™ / Teaser™ Trade Dress in commerce in the United States, including California and every other state, continuously since at

least 2012.  The Tippy Top™ / Teaser™ Trade Dress is unique and distinctive, and identifies the shoes as high-quality products from Plaintiff's Chinese Laundry brand.  As a result of Plaintiff's continuous use and extensive marketing and promotion of the Tippy Top™ / Teaser™ Trade Dress, Plaintiff has built up an now owns valuable goodwill that is symbolized by the trade dress.  Consumers have come to associate the Tippy Top™ / Teaser™ Trade Dress with shoes from Plaintiff's Chinese Laundry brand.

26. Plaintiff's Tippy Top™ / Teaser™ Trade Dress, and each of the distinctive elements thereof, is non-functional and has achieved distinctive and secondary meaning among consumers.  The Tippy Top™ / Teaser™ Trade Dress is ornamental and confers no utilitarian advantage.

27. In 2017, Plaintiff discovered that Defendant is unlawfully manufacturing, distributing, marketing and selling shoes that look confusingly similar to Plaintiff's Tippy Top™ and Teaser™ shoes, and that unlawfully copy, imitate and use the Tippy Top™ / Teaser™ Trade Dress.  Worse still, in violation of Plaintiff's Trademarks, Defendant markets and sells its offending shoes to consumers under the names "Tippy Tops," "Tippy Tops 2," and "Teasers." These shoes, which violate Plaintiff's Trade Dress and/or Trademarks, are hereinafter referred to as "the Infringing Shoes."  The Infringing Shoes are essentially unlawful knock-offs of Plaintiff's famous shoe brands.

28. Upon information and belief, Plaintiff was the first company to use the Tippy Top™ / Teaser™ Trade Dress in commerce in the United States, including California and every other state.  Defendant only began marketing and selling its Infringing Shoes after it learned of the popularity, fame and goodwill associated with Plaintiff's Tippy Top™ and Teaser™ shoes.

29. An example of Defendant's unlawful and infringing "Tippy Tops" shoe is shown below in Figure 3.



Infringing Shoe sold in Defendant's online store as "Dark Nude Tippy Tops"
(Images taken from www.marcdefang.com.)

Fig. 3

30. Besides "Dark Nude," Defendant also sells its unlawful and infringing "Tippy Tops" shoe in other colors, including at least the following: "Multicolor Crystal," "Ombre Crystalized," "Pearl Embellished," "Pink Patent," and "Red Patent." Except for being a different color, all of these shoes appear identical to the shoe shown in Figure 3. A few of these Infringing Shoes also have some purely cosmetic embellishments; however, the fundamental design, shape, pattern, look and feel of all the Infringing Shoes are the same. Images of these offending shoes, which were taken from Defendant's online store, appear in Ex. A attached hereto.

31. An example of Defendant's unlawful and infringing "Classic – Tippy Tops 2" is shown below in Figure 4.

| |
|---|
| Infringing Shoe sold on Defendant's online store as "Classic - Tippy Tops 2" (Images taken from www.marcdefang.com.) |
| Fig. 4 |

32. Besides "Classic" (nude), Defendant also sells its infringing "Tippy Tops 2" shoe in other colors, including at least the following: "Gold Rush," "Matt Silver,"[3] black, and white. Except for being a different color, these shoes all appear identical to the shoe shown in Figure 4. Images of these offending shoes, which were taken from Defendant's online store, appear in Ex. B attached hereto.

33. The Infringing Shoes are unlawful in at least one or more of the following respects:

    a. They copy, imitate and use the Tippy Top™ / Teaser™ Trade Dress, including but not limited to all of the distinctive elements identified above in paragraph 24.

    b. They use Plaintiff's Trademarks to identify, market and sell the shoes.

34. Defendant has never been given consent, permission or authorization to use the Tippy Top™ / Teaser™ Trade Dress or Trademarks. Defendant has no right to use the Tippy Top™ / Teaser™ Trade Dress or Trademarks in its marketing, promotion or sale of the Infringing Shoes. The Infringing Shoes were not designed or manufactured by Plaintiff, nor were they approved or endorsed by Plaintiff in any way.

35. Defendant's marketing and sale of the Infringing Shoes is likely to cause, and has

---

[3] Defendant's online store identifies these shoes as "Matt Silver." It's unclear whether this was an intentional spelling or a spelling error.

already caused, consumer confusion between Plaintiff's shoes and Defendant's shoes, and their identification and sourcing.

36. Defendant's unlawful use of the Tippy Top™ / Teaser™ Trade Dress and Trademarks suggests a sponsorship and affiliation that does not exist.

37. Upon information and belief, Defendant is familiar with the Tippy Top™ and Teaser™ shoes and names, which are famous and highly-respected in the fashion footwear industry. Plaintiff is informed and believes that Defendant intentionally copied, imitated and used the Tippy Top™ / Teaser™ Trade Dress and Trademarks in order to capitalize on the reputation, fame and goodwill associated with Plaintiff's brand.

38. Defendant's conduct in copying, imitating and using the Tippy Top™ / Teaser™ Trade Dress and Trademarks has been intentional, systematic, and deliberate. Defendant's actions are a calculated and bad faith attempt to trade upon the popularity, fame, distinctiveness and goodwill associated with Plaintiff's Tippy Top™ and Teaser™ shoes. Without limitation, some of the evidence demonstrating Defendant's unlawful intent and bad faith is discussed in the paragraphs below.

39. Defendant's *combined* unlawful use of the Tippy Top™ / Teaser™ Trade Dress *and* Trademarks clearly demonstrates that Defendant is intentionally trying to confuse and mislead consumers with respect to Plaintiff's shoes and Defendant's shoes, which directly compete against each other in the United States and abroad.

40. Plaintiff and Defendant both sell directly to consumers through their online stores. Defendant's online store is at www.marcdefang.com (the "DEFANG website"). According to the DEFANG website, most of Defendant's shoes are sold through its online store.

41. The DEFANG website's product page for the infringing "Dark Nude Tippy Tops" (www.marcdefang.com/womens-dark-nude-tippy-tops/) allows the metadata embedded in that

page to be accessed and viewed by the public. A copy of this metadata is attached hereto as Ex. C. As that document shows, the keywords Defendant has included for this particular webpage include (among others): "Tippy Top," "Teaser," and "Chinese Laundry Tippy Top."

42. Similarly, Defendant has included these same keywords in the metadata for *all* of the product pages of the Infringing Products, as well as on various other pages on which the Infringing Products are displayed on the DEFANG website. Copies of this metadata (which is publicly accessible by right-clicking on the website) is attached hereto as Ex. D.

43. By including these keywords in the metadata, whenever a consumer enters one of these words into a query using an internet search engine (*e.g.*, Google, Bing, or the DEFANG website's own internal search engine) the DEFANG website's Infringing Shoes will be prioritized in the search results. For example, in Google, searching the phrase "Teaser women's heel" results in the DEFANG website being shown in the first page of results. In Bing, entering the phrase "Chinese Laundry Tippy Top" results in the DEFANG website being shown on the first page of results. Entering "Teaser" in the DEFANG website's internal search engine results in 26 of Defendant's shoes being shown in the resulting list of product hits, including the Infringing Shoes.

44. Defendant (or its agent) operates various official company social media accounts, including at least accounts on Twitter, Facebook, Pinterest, and Instagram. Links to these social media accounts are embedded in the DEFANG website. Defendant uses these social media accounts to market its products directly to potential consumers. Some or all of these social media accounts include links to websites where consumers can purchase Defendant's products, including the Infringing Shoes.

45. On all of its social media accounts (including at least Twitter, Facebook, Pinterest, and Instagram), Defendant refers to its Infringing Shoes as "Tippy Tops" and "Teasers." A sample of Defendant's offending social media marketing materials is attached hereto as Ex. E.

46. Upon information and belief, Defendant began marketing and selling its infringing "Tippy-Tops 2" in direct response to Plaintiff's Teaser 2™. Indeed, on the DEFANG website, Defendant advertises the "Tippy-Tops 2" as primarily having an upgraded heel, which is the same feature that Plaintiff upgraded in its Teaser 2™. This clearly demonstrates that Defendant was intentionally trying to capitalize specifically on Plaintiff's marketing efforts in connection with Plaintiff's upgraded version of its shoe.

47. One of the most egregious examples of consumer confusion is found on Defendant's own website. On the DEFANG website's "reviews" page, one customer identified as "Jessica – USA – March 24, 2015," states that she has purchased "6" heels, Chinese Laundry Crystalized Strappy Platform" shoes. This customer incorrectly believes that the shoes she purchased from Defendant are Plaintiff's shoes. *See* Ex. F attached hereto. Despite this customer's incorrect identification, Defendant *still* publicly posted this review on its website.

48. Upon information and belief, Defendant (or its agent) markets and sells Defendant's products directly to consumers in the United States and abroad using an official company eBay account. Just like the DEFANG website, Defendant's eBay account unlawfully identifies the Infringing Shoes as "Tippy Tops" and "Teasers." *See* Ex. G attached hereto. A search using eBay's internal search engine for "Teaser" and "Tippy Top" in the Clothing, Shoes and Accessories department returns a list including both Plaintiff's shoes and Defendant's shoes.

49. Upon information and belief, Defendant (or its agent) markets and sells Defendant's products directly to consumers in the United States and abroad using Amzaon.com's online store. In that online store, Defendant's Infringing Shoes are unlawfully identified as "Tippy Tops" and "Teasers." *See* Ex. H attached hereto. A search on Amazon.com's internal search engine for "Teaser" and "Tippy Top" in the Women's Clothes department returns a list including both Plaintiff's shoes and Defendant's shoes.

50. By reason of Defendant's intentional, deliberate and bad faith conduct, Plaintiff has suffered and will continue to suffer damage to its business, reputation, and goodwill, and the loss of sales and profits Plaintiff would have realized but for Defendant's conduct. Unless restrained and enjoined, Defendant will continue to engage in the conduct complained of and irreparably damage Plaintiff. Plaintiff's remedy at law is not adequate to compensate Plaintiff for all the resulting injuries arising from Defendant's conduct.

## FIRST CLAIM FOR RELIEF

**(Trademark and Trade Dress Infringement in
Violation of Lanham Act § 43(a), 15 U.S.C. § 1125(a))**

51. Plaintiff re-alleges and incorporates by reference all of the previous paragraphs of this Complaint.

52. Plaintiff's Trademarks and Tippy Top™ / Teaser™ Trade Dress is subject to protection under federal trademark law, including but not limited to 15 U.S.C. § 1125.

53. Defendant's use of the Trademarks to identify its shoe products is likely to cause consumer confusion, deception and mistake by creating the false and misleading impression that Defendant's products are manufactured or distributed by Plaintiff, or are associated or connected with Plaintiff, or have the sponsorship, endorsement or approval of Plaintiff.

54. Defendant's copying, imitation and use of the Tippy Top™ / Teaser™ Trade Dress for its knock-off shoes has caused and is likely to cause consumer confusion, deception and mistake by creating the false and misleading impression that Defendant's products are manufactured or distributed by Plaintiff, or are affiliated, connected or associated with Plaintiff, or have the sponsorship, endorsement or approval of Plaintiff.

55. Defendant's actions constitute a violation of 15 U.S.C. § 1125(a), and Defendant's actions have caused and, unless enjoined by this Court, will continue to cause, a likelihood of confusion and deception of members of the trade and public and, additionally, injury to Plaintiff's goodwill and reputation.

56. Plaintiff has no adequate remedy at law for Defendant's actions.

57. Defendant's actions demonstrate an intentional and willful intent to trade upon the goodwill associated with Plaintiff's Trademarks and Tippy Top™ / Teaser™ Trade Dress to Plaintiff's great and irreparable injury.

58. Defendant's actions have caused and is likely to continue causing substantial injury to the public and to Plaintiff, and Plaintiff is entitled to injunctive relief, and to recover Defendant's profits, actual damages, enhanced profits and damages, and costs and reasonable attorney's fees under 15 U.S.C. §§ 1116, 1117, and 1125.

## SECOND CLAIM FOR RELIEF

**(Federal Unfair Competition and False Designation of Origin in Violation of Lanham Act § 43(a), 15 U.S.C. § 1125(a))**

59. Plaintiff hereby re-alleges and incorporates by reference all of the previous paragraphs of this Complaint.

60. Defendant's unlawful copying, imitation and use of the Tippy Top™ / Teaser™ Trade Dress and Trademarks in connection with its shoe products is a false and misleading designation of origin and a false and misleading representation of facts, which:

   a. Is likely to cause consumer confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of Defendant with Plaintiff, or as to the origin, sponsorship or approval of Defendant's good or commercial activities by Plaintiff; and/or

   b. In commercial advertising or promotion, misrepresent the nature, characteristics or qualities of Defendant's goods, services, or commercial activities.

61. Defendant's actions are in violation of 15 U.S.C. § 1125(a), and constitute unfair competition against Plaintiff.

62. Defendant's actions demonstrate an intentional and willful intent to trade upon the goodwill associated with Plaintiff's Trademarks and Tippy Top™ / Teaser™ Trade Dress to the great and irreparable injury of Plaintiff.

63. Defendant's actions have caused and is likely to continue causing substantial injury to the public and to Plaintiff, and Plaintiff is entitled to injunctive relief, and to recover Defendant's profits, actual damages, enhanced profits and damages, and costs and reasonable

attorney's fees under 15 U.S.C. §§ 1116, 1117, and 1125.

### THIRD CLAIM FOR RELIEF

### (Federal Trademark and Trade Dress Dilution in Violation of Lanham Act § 43(c), 15 U.S.C. § 1125(c))

64. Plaintiff re-alleges and incorporates by reference all of the previous paragraphs of this Complaint.

65. Plaintiff's Tippy Top™ / Teaser™ Trade Dress is distinctive and famous throughout the United States. Defendant has used, and is using, the Tippy Top™ / Teaser™ Trade Dress on its competing shoe products in a manner that is substantially indistinguishable from said trade dress, after it became famous as a result of Plaintiff's use and efforts.

66. Plaintiff has extensively and continuously promoted and used the Trademarks throughout the United States and abroad, and the Trademarks have thereby become famous and a well-known symbol of Plaintiff's shoe products.

67. Plaintiff is the owner of the Trademarks and Tippy Top™ / Teaser™ Trade Dress.

68. Plaintiff's Trademarks and Tippy Top™ / Teaser™ Trade Dress qualify as famous marks, as that term is used in 15 U.S.C. § 1125(c)(1), and such marks have been continuously used and never abandoned by Plaintiff since their inception of use.

69. Upon information and belief, Defendant acted with knowledge of the fame and reputation of Plaintiff's Trademarks and Tippy Top™ / Teaser™ Trade Dress with the purpose of usurping such rights and to willfully and intentionally confuse, mislead and deceive members of the public to the great and irreparable detriment of Plaintiff.

70. Defendant's actions have and are likely to dilute, blur and tarnish the distinctive quality of the Tippy Top™ / Teaser™ Trade Dress, and the value and goodwill associated with said trade dress and Plaintiff's Trademarks. Defendant's actions will also lessen the capacity of the Tippy Top™ / Teaser™ Trade Dress and Trademarks to identify and distinguish Plaintiff's shoe products.

71. Defendant's actions are in violation of 15 U.S.C. § 1125(c), and Plaintiff has been and is likely to be damaged by those actions. Unless Defendant is restrained, Plaintiff will

1 continue to suffer damages and injury to its reputation and goodwill.

2     72. Because Defendant acted willfully and intentionally to trade upon Plaintiff's reputation and goodwill, and/or to cause dilution of Plaintiff's famous Tippy Top™ / Teaser™ Trade Dress and Trademarks, Plaintiff is entitled to injunctive relief, and to recover Defendant's profits, actual damages, enhanced profits and damages, and costs and reasonable attorney's fees under 15 U.S.C. §§ 1116, 1117, and 1125.

### FOURTH CLAIM FOR RELIEF

**(Unfair Competition in Violation of Cal. Bus. & Prof. Code. § 17200, *et seq.*)**

73. Plaintiff re-alleges and incorporates by reference all of the previous paragraphs of this Complaint.

74. Defendant's actions, including the unlawful copying, imitation and use of the Tippy Top™ / Teaser™ Trade Dress and Trademarks in connection with the manufacture, marketing, distribution and sale of Defendant's shoe products, constitute an unlawful, unfair and/or fraudulent business act or practice, and unfair, deceptive, untrue or misleading advertising, in violation of Cal. Bus. & Prof. Code § 17200, *et seq*.

75. Defendant's pattern and practice of copying, imitating and using the Tippy Top™ / Teaser™ Trade Dress and Trademarks in connection with Defendant's shoe products, and of trading upon Plaintiff's goodwill and reputation, constitutes an unfair business practice in violation of Cal. Bus. & Prof. Code § 17200, *et seq*.

76. Defendant's actions have been willful, and Plaintiff has been and is likely to be damaged by those actions.

### FIFTH CLAIM FOR RELIEF

**(Dilution of Trademark and Trade Dress in  
Violation of Cal. Bus. & Prof. Code § 14247, *et seq.*)**

77. Plaintiff re-alleges and incorporates by reference all of the previous paragraphs of this Complaint.

78. Plaintiff's Tippy Top™ / Teaser™ Trade Dress and Trademarks have become famous, in that they are widely recognized by the general consuming public of this State as a

designation of source of Plaintiff's high-end, fashionable and superior-quality shoe products.

79. After the Tippy Top™ / Teaser™ Trade Dress and Trademarks became famous, Defendant began copying, imitating and using said trade dress and those trademarks in connection with the Infringing Shoes, which are unlawful knock-offs of Plaintiff's shoes.

80. Defendant's actions have diluted, blurred and tarnished the strong and positive associations and goodwill represented by the Tippy Top™ / Teaser™ Trade Dress and Trademarks by lessening their capacity to identify and distinguish Plaintiff's products, and by causing Plaintiff's products, trade dress and trademarks to be associated with shoe products not designed, manufactured, sponsored or approved by Plaintiff.

81. Defendant's actions are in violation of Cal. Bus. & Prof. Code § 14247, *et seq.*, and Plaintiff has been and is likely to be damaged by those acts.

## SIXTH CLAIM FOR RELIEF

**(Common Law Trademark / Trade Dress Infringement and Unfair Competition)**

82. Plaintiff re-alleges and incorporates by reference all of the previous paragraphs of this Complaint.

83. Defendant's copying, imitation and use of the Tippy Top™ / Teaser™ Trade Dress and Trademarks, and the combination of the unique and distinctive design and features of Plaintiff's shoes, constitute infringement and misappropriation of Plaintiff's intellectual property; unjust enrichment of Defendant; and unfair competition with Plaintiff in violation of Plaintiff's rights under the common law of California and other states of the United States.

84. Defendant's actions constitute common law trademark and trade dress infringement and unfair competition, in that they have created and will continue to create a likelihood of confusion to the irreparable injury of Plaintiff unless restrained by this Court. Plaintiff has no adequate remedy at law for this injury.

85. Defendant's actions demonstrate a deliberate, willful and bad-faith intent to trade upon the reputation and goodwill associated with Plaintiff's Trademarks and Tippy Top™ / Teaser™ Trade Dress.

86. As a result of Defendant's actions, Plaintiff has been damaged in an amount not yet

determined or ascertainable. However, at a minimum, Plaintiff is entitled to injunctive relief, to an accounting of Defendant's profits, to damages, and to reasonable attorney's fees and costs. Additionally, in light of the intentional, willful and bad-faith nature of Defendant's actions, Plaintiff is entitled to an award of punitive damages.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for judgment in its favor and against Defendant, including:

A. A preliminary and permanent injunction enjoining Defendant, its officers, shareholders, agents, servants, employees, attorneys, successors and assigns, suppliers, manufacturers, distributors, business partners, e-tailers, retailers, and those in privity with them, and those persons in active concert or participation with any of them, from manufacturing, marketing, advertising, displaying, distributing or selling the Infringing Footwear or any other footwear products that copy, imitate or use any of Plaintiff's Trademarks or Tippy Top™ / Teaser™ Trade Dress.

B. An Order directing Defendant to file with this Court and serve on Plaintiff's counsel within thirty (30) days after service of an injunction, a report under oath setting forth in detail the manner and form in which Defendant has complied with the injunction.

C. An accounting of Defendant's profits arising from Defendant's unfair competition and trademark infringement, and an award of said profits to Plaintiff.

D. An award of actual damages sustained by Plaintiff.

E. An award of statutory damages.

F. An award of treble, extraordinary and/or punitive damages.

G. Pre-judgment and post-judgment interest on the above damages awards.

H. An award of costs and reasonable attorney's fees incurred by Plaintiff in connection with this action.

I. Such other and further relief that this Court may deem just.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

```
                                        /s/ Peter Bonfante
Dated:  October 16, 2017       By: _____
                                   Peter Bonfante
                                   *Attorney for Plaintiff*
```